**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OSCAR MARTINEZ<br><br>Plaintiff,<br><br>v.<br><br>INSIGHT GLOBAL LLC & FISERV<br><br>SOLUTIONS LLC<br><br>Defendants. | Civil Action No.: 25-15837<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

This matter comes before the Court by way of defendant Fiserv Solution LLC's ("Defendant" or "Fiserv") motion to compel arbitration or, in the alternative, to stay this matter. ECF No. 16. Plaintiff Oscar Martinez ("Plaintiff" or "Martinez") opposed the motion, ECF No. 19, and Defendant replied, ECF No. 20. The Court decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion is denied in part and granted in part.

I.      **BACKGROUND**[1]

Plaintiff was an employee of Insight Global LLC ("Insight"), which Plaintiff voluntarily dismissed from this action in favor of arbitration. ECF No. 12; ECF No. 15 at 2–3. Insight is an agency that provides staffing services to its customer Fiserv. ECF No. 15 at 2–3. Fiserv provides

---

[1] The background factual allegations are drawn from Plaintiff's complaint, which the Court accepts as true for the purposes of the motion. The Court also relies on the Parties' "Stipulation Regarding Refinement of Issues" in which the Parties met and conferred to "frame the relevant issues on which they agree for the purposes" this motion. ECF No. 15.

financial services technology.  ECF No. 1-1 ("Compl.") ¶ 2.  Plaintiff worked full-time in information technology and was hired by Insight to provide services for Fiserv.  *Id.* ¶¶ 10, 14; ECF No. 15 at 3.  Pursuant to an employment contract (the "Agreement") signed by Insight and Plaintiff, Insight would pay Martinez $116.00 per regular hour and $174.00 per overtime hour.  Compl. ¶ 22; ECF No. 15 at 3.  Fiserv, however, was responsible for setting Plaintiff's hours and schedule, assigning work, and, among other things, approving time-off requests.  Compl. ¶¶ 17–19.  Plaintiff also worked at a Fiserv office.  *Id.* ¶ 11.

Plaintiff alleges that Fiserv's Vice President of Technology instructed Plaintiff to reduce the hours listed on his timesheet from 60 to 40 hours.  Compl. ¶¶ 24, 35.  Thereafter, Plaintiff's timesheet reflected 40 hours of work despite working more in certain weeks.  *Id.* ¶ 37.  Plaintiff filed this suit against Insight and Fiserv for failure to pay regular and overtime wages and unjust enrichment under New Jersey law.  *Id.* ¶¶ 42–50.  He further asserted claims against Insight for breach of contract and breach of the duty of good faith and fair dealing.  *Id.* ¶¶ 51–60.

Plaintiff first filed suit in the Superior Court of New Jersey Morris County Law Division.  The defendants then removed the case to this Court.  *See* ECF No. 1.  Thereafter, as discussed above, Plaintiff voluntarily dismissed his claims against Insight without prejudice and entered arbitration with Insight pursuant to an arbitration clause (the "Arbitration Provision") in the employment Agreement.  ECF No. 12; ECF No. 15, Ex. A.  The Arbitration Provision states, in part:

> **21. Neutral binding arbitration, waiver of trial before judge or jury, and waiver of class, collective and representative claims.** . . . [I]n the event of any dispute or claim arising out of or relating to Contract Employee's [(i.e., Plaintiff's)] application for employment with Insight Global, Contract Employee's employment with Insight Global, the termination of Contract Employee's employment, or otherwise relating to this Agreement (collectively, "Disputes"), Contract Employee and Insight Global agree that all such Disputes shall be fully, finally and exclusively resolved by confidential, binding, individual arbitration[.]

> Contract Employee and Insight Global agree that a confidential arbitration, as contemplated by the Federal Arbitration Act and related case law, is the sole and exclusive forum for resolution of any and all Disputes and hereby mutually waive their right to trial before a judge or jury in federal or state court in favor of arbitration under this Agreement.
>
> \*\*\*
>
> BY SIGNING THIS AGREEMENT, CONTRACT EMPLOYEE AND INSIGHT GLOBAL EACH IRREVOCABLY WAIVES HIS/HER/ITS RIGHT TO A JURY TRIAL AND HIS/HER/ITS RIGHT TO PARTICIPATE IN A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION.  CONTRACT EMPLOYEE AND INSIGHT GLOBAL AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER BUT NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE OR REPRESENTATIVE PROCEEDING, EXCEPT AS REQUIRED BY APPLICABLE LAW THAT IS NOT PREEMPTED BY FEDERAL LAW.

ECF No. 15, Ex. A ¶ 21.  Fiserv, however, is not a signatory to the Agreement.  ECF No. 15 at 3. As such, the parties dispute whether Fiserv can compel Plaintiff to arbitrate his remaining claims against Fiserv pursuant to the Arbitration Provision.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") reflects the strong federal policy in favor of arbitration and "places arbitration agreements on equal footing with all other contracts.'" *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  Pursuant to the FAA, courts "compel arbitration of claims covered by a written, enforceable arbitration agreement."  *Bacon*, 959 F.3d at 599 (citing FAA, 9 U.S.C. §§ 3, 4).  Yet despite the strong presumption of arbitrability, "[a]rbitration is strictly a matter of contract" and is thus governed by state law.  *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 441, 444 (3d Cir. 1999) ("If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.").  Accordingly, when deciding to compel arbitration under the FAA, the Court must determine "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (citation omitted).

In conducting this inquiry, the Court applies state law principles of contract formation. *Torres v. Rushmore Serv. Ctr., LLC*, No. 18-9236, 2018 WL 5669175, at *2 (D.N.J. Oct. 31, 2018).

## III.    DISCUSSION

The Court is faced with deciding whether Fiserv, which did not sign the Agreement, may enforce the Arbitration Provision or otherwise compel arbitration. To that end, Fiserv advances two arguments that the Court will address in turn. First, Fiserv contends that it is a third-party beneficiary of the Agreement and may therefore enforce the Arbitration Provision. ECF No. 16-1 ("Def. Br.") at 10–13. Second, Fiserv argues that it can compel Plaintiff to arbitrate under the doctrine of equitable estoppel. *Id.* at 13–15. Finally, should this Court determine that Fiserv cannot compel arbitration, Fiserv requests that the Court stay the matter pending the outcome of Plaintiff and Insight's arbitration. *Id.* at 16–19. As discussed below, Fiserv cannot compel Plaintiff to arbitrate under either theory, but the Court will stay this action.

### A.    Third-Party Beneficiary

Fiserv argues that it can compel arbitration because it is a third-party beneficiary of the Agreement between Plaintiff and Insight. The Court disagrees. Under New Jersey law, a contract may "be enforced by or against nonparties to the contract through . . . third-party beneficiary theories." *Wafula v. Artech Info. Sys., LLC*, No. A-1160-20, 2022 WL 17366274, at *3 (N.J. Super. Ct. App. Div. Dec. 2, 2022) (cleaned up). The third-party, however, "may only enforce a contract if it is an intended beneficiary, rather than a mere incidental beneficiary." *Villegas v. Corr. Med. Servs., Inc.*, No. 14-7337, 2016 WL 3708218, at *2 (D.N.J. July 12, 2016). As such, courts focus on the parties' intent. "The intent of the parties is derived 'from an examination of the contract and a consideration of the circumstances attendant to its execution.'" *Sheth v. Artech*

*LLC*, No. 25-1205, 2025 WL 1588021, at *3 (D.N.J. June 5, 2025) (quoting *Mut. Ben. Life Ins. Co. v. Zimmerman,* 783 F. Supp. 853, 866–67 (D.N.J. 1992)).

Fiserv argues that it must be an intended beneficiary because it "is named at least 75 times in the Agreement." Def. Br. at 12. The Agreement states that it was made between Plaintiff and Insight "for Fiserv Inc. or one of its subsidiaries or affiliates." ECF No. 15-1, Ex. A. Fiserv is then defined as the "Customer." *Id.* The Agreement continues that Plaintiff agrees "to provide specialized services for a project . . . to be performed for the Customer." *Id.* ¶ 2. It also states that either Insight or Fiserv had the right to end Plaintiff's assignment. *Id.* ¶ 3. Other provisions provide that Fiserv controlled elements of Plaintiff's day-to-day work such as hours, expenses, supervision, and e-mail and internet policies. *Id.* ¶¶ 5–6, 8–9, 15.

Although the Agreement mentions Fiserv throughout, the plain language of the Arbitration Provision is not clearly intended to benefit Fiserv. Indeed, Fiserv is not mentioned in the Arbitration Provision at all. *Id.* ¶ 21. That Fiserv is referenced "at least 75 times" throughout the Agreement but is not named in the Arbitration Provision suggests that the parties did not intend for Fiserv to benefit from it. Put another way, if the parties intended for Fiserv to be a third-party beneficiary, they could have used express language as they did elsewhere in the Agreement. *See, e.g., Sheth*, 2025 WL 1588021, at *4 (reasoning that parties were "sophisticated commercial entities and if [the third party] was intended to be covered by the Arbitration Clause, that 'could have easily been accomplished with additional direct and express language as contemplated and required by our caselaw when an individual is giving up certain rights with respect to dispute resolution.'" (quoting *Wafula*, 2022 WL 17366274, at *2)).

Moreover, courts have denied similar motions to compel arbitration in circumstances involving a staffing agency and its customer. For example, in *Wafula v. Artech Information*

5

*Systems, LLC*, a New Jersey appellate court affirmed a finding of no third-party beneficiary status where, like here, the arbitration provision at issue did not mention the third party.[2] *Wafula*, 2022 WL 17366274, at *1. And, in *Sheth v. Artech LLC*, the district court found that there was no third-party beneficiary when the agreement at issue made clear that the plaintiff was "not an employee of any [third-party] Client." *Sheth*, 2025 WL 1588021, at *4. Here too, the Agreement expressly states, "Contract Employee acknowledges that Contract Employee is not an employee of Customer" and that "Contract Employee agrees that he/she will not, directly or indirectly . . . accept employment on a full or part-time basis, or enter into any contractual or consulting arrangement with Customer." ECF No. 15-1, Ex. A ¶¶ 7, 14.

Finally, Defendant contends that it is an intended beneficiary because the Arbitration Provision covers "any dispute or claim arising out of or relating to [Plaintiff's] employment with Insight Global . . . or otherwise relating to this Agreement." Def. Br. at 9–13; ECF No. 20 ("Def. Reply") at 6. That is, the "language is sufficiently broad to encompass" the claims brought in this case. Def. Br. at 9. This is unavailing. On this record, Plaintiff could not have intended to waive his right to sue Fiserv in this Court on such broad terms, especially considering the specific references to Fiserv throughout the Agreement. *See, e.g.*, *Wafula*, 2022 WL 17366274, at *2 ("The fact that Plaintiff signed an [a]greement with [staffing agency] that provides specific detail as to the nature of her position and contains the phrase 'any claims' does not equate to Plaintiff knowingly and purposely conferring the benefit of the arbitration clause in question upon [the third

---

[2] Defendant's reliance on *Dunkley v. Mellon Investor Services* is misplaced. Def. Br. at 11; ECF No. 20 at 2, 6. There, the court found that the parties intended a third party to benefit from an employment contract because the arbitration agreement "required Plaintiff to arbitrate all disputes, 'including disputes arising out of or related to the actions of [staffing agency's] customers (or customer's employees).'" *Dunkley*, No. 06-3501, 2007 WL 3025730, at *3 (D.N.J. Oct. 15, 2007). Here, the Arbitration Provision is silent as to whether it applies to disputes with Fiserv.

party.]"). Accordingly, the Court finds that Fiserv is not an intended third-party beneficiary of the Agreement.

### B.    Equitable Estoppel

Defendant argues in the alternative that Plaintiff should be equitably estopped from avoiding arbitration. Def. Br. at 13–15; Def. Reply at 7–12. Estoppel may be used to compel arbitration by a non-signatory and "is invoked in the interests of justice, morality and common fairness." *Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 857–58 (N.J. 2013). "To establish equitable estoppel, parties must prove that an opposing party 'engaged in conduct, either intentionally or under circumstances that induced reliance, and that [they] acted or changed their position to their detriment.'" *Id.* (alteration in original) (quoting *Knorr v. Smeal*, 836 A.2d 794, 799 (N.J. 2003)). As such, to compel arbitration by equitable estoppel, the non-signatory defendant must prove 1) "the parties and claims are intertwined" with the underlying contract and 2) detrimental reliance. *Id.* at 860. "[A]lthough equitable estoppel may be used in certain circumstances as a basis to compel arbitration, its use has limited applicability." *Id.* at 859. Here, Defendant has not shown that Plaintiff's claims and the Agreement are intertwined.

Defendant contends that Plaintiff's statutory wage and hour claims are intertwined with the Agreement because the Agreement provides for "Plaintiff's rate of pay, overtime eligibility as well as the procedure for billing and being paid for his working time providing services for Fiserv." Def. Br. at 14 n.3. In other words, "Plaintiff relies on the Agreement for relief yet attempts to escape mandatory arbitration." *Id.* at 14. Conversely, Plaintiff argues his claims and the Agreement are not so intertwined because "he is asserting statutory rights that exist independently of the Agreement." Pl. Br. at 11–12. The Court agrees.

Claims and parties are sufficiently intertwined with a contract when the claims asserted against a non-signatory defendant seek to enforce rights or obligations created by that contract. *See KPH Healthcare Services, Inc. v. Janssen Biotech, Inc.*, No. 20-05901, 2021 WL 4739601, at *1–2 (D.N.J. Oct. 12, 2021) ("[W]here there would be no claim against the non-signatory defendant but for the contract, applying the doctrine of estoppel is appropriate."). For example, in *McLean v. HSBC Finance Corporation* the court compelled arbitration with a non-signatory defendant because the plaintiff's claims involved modifications to a home loan and therefore arose from the loan agreement. No. 15-8974, 2016 WL 5796865, at *3 (D.N.J. Oct. 3, 2016) ("The letters and the loan modification plans they contain only exist by virtue of the loan they purport to modify, which is governed by the Mortgage Agreement."). And, in *Sicily by Car S.p.A. v. Hertz Global Holdings, Inc.*, the court compelled arbitration because the claims arose from a licensing agreement. No. 14-6113, 2015 WL 2403129, at *5 (D.N.J. May 20, 2015) (stating alleged loss "would not exist but for [plaintiff's] entitlement to the business by virtue of the License Agreement.").

Here, Plaintiff's wage and hour claims against Fiserv do not arise solely because of the Agreement. That is, although the Agreement sets Plaintiff's wage and gives Fiserv control over Plaintiff's day-to-day work, Plaintiff's claims against Fiserv do not invoke those terms. Indeed, he separately sued Insight for breach of contract. *See* Compl. Moreover, Plaintiff alleges that Fiserv is liable under New Jersey wage and hour law because it is purportedly a joint employer with Insight—Plaintiff's direct employer under the Agreement. Compl. ¶¶ 42–47; Pl. Br. at 14. That issue can be decided without reference to the Agreement. Whether Fiserv was Plaintiff's joint employer will ultimately hinge on:

> 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees'

8

conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Perez v. Access Bio, Inc.*, No. A-3071-16T4, 2019 WL 3297297, at *6 (N.J. Super. Ct. App. Div. July 23, 2019) (quoting *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 468 (3d Cir. 2012)). The determination will rest on whether Fiserv actually exercised control over Plaintiff's employment, not whether Fiserv had the right to do so under the Agreement. Accordingly, Plaintiff's claims against Fiserv are not sufficiently intertwined with the Agreement, and the Court will not compel arbitration by equitable estoppel.

### C.     Motion for Stay

Finally, Fiserv requests the Court stay this action pending Plaintiff's arbitration with co-defendant Insight. Def. Br. at 14–16. Courts "have discretion to control [their] docket and stay litigation pending the outcome of arbitration." *Sheth*, 2025 WL 1588021, at *5 (citing *Mendez v. Puerto Rican Int'l Companies, Inc.,* 553 F.3d 709, 712 (3d Cir. 2009)). "A court may stay proceedings in the interest of efficiency where the issues in arbitration are related to (if not strictly dispositive of) the issues before the court." *Id.* (quotation omitted).

The issues to be decided in arbitration overlap with the issues in this litigation. Defendant correctly points out that the arbitration proceedings will necessarily involve whether Insight properly paid Plaintiff. Def. Br. at 17. That is also a key issue in Plaintiff's claim against Fiserv as an alleged joint employer. Indeed, there would be no joint employer liability without finding that Plaintiff was incorrectly paid. Additionally, discovery in this litigation may overlap with the arbitration discovery. Part of Plaintiff's allegations are that a Fiserv executive told Plaintiff to reduce his hours on his timesheet—which Insight was responsible for paying. Compl. ¶ 35. As such, Fiserv employees may be deposed or called as witnesses in arbitration. Accordingly,

9

permitting dual tracks of discovery would be an inefficient use of judicial resources and may result in unnecessary expenses for the parties. And, finally, allowing litigation to continue may result in inconsistent findings and permitting arbitration to proceed will likely narrow the issues that will ultimately be before this Court. *See Marinelli v. Citibank, N.A.*, No. 22-7023, 2023 WL 6558498, at *2 (D.N.J. July 25, 2023) (it is appropriate to stay proceedings pending arbitration "when it is in the interest of judicial economy"). The case, therefore, is stayed.

## IV.    CONCLUSION

For the reasons stated herein, Fiserv's motion is denied in part and granted in part.

Accordingly, for the reasons stated above, **IT IS** on this 27th day of July, 2026;

**ORDERED** that Defendant's motion to compel arbitration (ECF No. 16) is **DENIED** in part without prejudice and **GRANTED** in part; and it is further

**ORDERED** that this action is **STAYED** and administratively terminated until further Order of the Court; and it is further

**ORDERED** that the parties shall file a joint status report regarding the status of any arbitration related to Plaintiff's claims ninety (90) days after the date of this Order, and every ninety (90) days thereafter.

**SO ORDERED**.

*s/ Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**

10